CENTRAL VERMONT RAILWAY COMPANY *v.* L. M. CARPENTER.

October Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 20, 1912.

*Sworn and Unanswered Petition for Change of Venue—Conclu-*
*siveness—Effect—Allegations on Information and Belief—*
*Effect.*

The facts that defendant's petition for a change of venue, on the
ground of local prejudice preventing an impartial trial, was verified
by the oath of its general manager, and that no answer thereto was
filed, nor counter affidavits submitted, did not require the presiding
judge to treat the facts stated in the petition as conclusive.

Allegations on information and belief in an unanswered petition by a
railroad, verified by the oath of its general manager, for a change
of venue on the ground of local prejudice preventing an impartial
trial, are not evidence, and can serve only to raise an issue.

Allegations in an unanswered petition of a railroad company, verified
by the oath of its general manager, for a change of venue on the
ground of local prejudice preventing an impartial trial, considered,
and *held*, that the presiding judge was not bound to find there-
from that petitioner could not obtain a fair trial in the county.

PETITION for a writ of *certiorari* brought to the Supreme
Court for Windham County at its October Term, 1911, and then
heard on the pleadings. The opinion states the case.

*Clarke C. Fitts* and *Harold E. Whitney* for the petitioner.

*Cudworth & Pierce* and *Gibson & Waterman* for the peti-
tionee.

POWERS, J. We have here an action on the case, which is
pending in the county court of Windham County, wherein the
defendant seasonably preferred its petition to the presiding
judge of that court, asking for a change of venue, because of a

prejudice against it in that county. The prayer of that petition having been denied on hearing, the defendant has brought this petition for a writ of certiorari to bring up for review the record of the proceedings thereunder.

So far as need be stated, the allegations of the petition for a change of venue are to this effect:

The pending suit is an action for the recovery of damages on account of personal injuries alleged to have been suffered by the plaintiff, while in the defendant's employ, through the latter's negligence. The defendant operates a railroad from New London, Conn. to Brattleboro, Vt. In September, 1910, the Public Service Commission ordered the defendant to abolish the grade crossing at Brattleboro—to which undertaking the town of Brattleboro had voted to appropriate a large sum of money. This order, the defendant promptly proceeded to carry into effect. At the last session of the legislature, the Vermont Valley Railroad, which is operated by the Boston & Maine Railroad, sought the right to construct a line paralleling the tracks of the defendant from South Vernon to Brattleboro, and a bill was introduced providing for this. This project brought on an acute controversy between the two railroads, which came to involve the citizens of Brattleboro and the whole county, who, on account of expected increased railroad facilities, benefits and advantages, earnestly espoused the cause of the Vermont Valley road. The two newspapers published in Brattleboro took an active part in the controversy, advocating the cause of the Vermont Valley, and made it a leading feature of their successive issues. These papers are said to circulate in every town in the county and to reach practically every person therein qualified to serve as jurors in county court, and have been a factor in creating a general prejudice against the defendant throughout the county. Certain issues of these papers are made a part of the petition by reference. While the railroad bill was pending before the legislature, public meetings were held at Brattleboro, at which marked hostility toward the defendant was shown. A special town meeting was held in Brattleboro, at which the appropriation in aid of the abolition of the grade crossing was rescinded, and the town authorities began proceedings to have the order aforesaid revoked, which proceedings the defendant is contesting.

Brattleboro is the natural business center of the county; from it emanate lines of public communication reaching practic-

ally every town and hamlet therein, and anything which affects the railroad situation in Brattleboro is of vital interest to the whole county; and citizens throughout the county participated in the general agitation which has been going on regarding these matters.

The allegations close with the assertion that "throughout the county there exists a prejudice against your petitioner, well defined, general, and openly expressed."

The petition is signed and sworn to by G. C. Jones, General Manager. No formal answer was filed. Numerous exhibits and copies of records and proceedings were filed in support of the petition, and the plaintiff filed numerous newspaper exhibits. No testimony was filed or offered by either party.

In disposing of the matter, the presiding judge said:

"I am unable to find that there is reason to believe that said action cannot be impartially tried in the county of Windham, and the petition is dismissed. I do not consider the evidence sufficient to show such a feeling among the people of this county as to prevent a fair trial of the case by jury."

The defendant insists that, inasmuch as no answer was filed and no counter affidavits submitted, the allegations of the petition, being verified by the oath of the defendant's general manager, should have been treated as conclusive of the facts thereby covered; and, since they cover all essential facts, there was no room for the exercise of any discretion, and the petition should have been granted. In support of this proposition, the defendant cites *Mix* v. *Kepner*, 81 Mo. 93. There, the plaintiff filed a written application, verified by his oath, alleging that he believed that "the said defendant has an undue influence over the minds of the inhabitants of Henry County, and that the inhabitants of said Henry County are so prejudiced against plaintiff that he cannot have a fair trial in said Henry County." This motion was filed under a statute which provides that the court shall be "satisfied" that the party could not have a fair trial in the county where the action is pending and it was held that the application and verification, being in full compliance with the statute, made a *prima facie* case, and that the statute did not require that the court should be "satisfied" in any other manner.

We cannot adopt this view. It makes it too easy to secure a change of the place of trial. Whether, in the circumstances here presented, the petition stood as anything more than a plead-

ing, and whether the presiding judge was required to treat it as evidence at all, are questions not presented, for it appears that he did treat it as evidence. But, in any view, he was not obliged to adopt the inferences and opinions therein contained. He was to draw his own inferences and reach his own conclusions from the specific facts set forth. If we analyze the allegations, we find much that the presiding judge was not obliged to accept as true. If we separate the allegations of specific facts, like the pendency of the litigation over the grade crossing, the contest ·in the legislature, the public meetings, the contents of the newspapers, etc., and assume that it was ·the duty of the judge to treat these as true, it does not dispose of the matter. The ultimate fact to be established was that there was reason to believe that the defendant could not obtain an impartial trial in Windham County. To show this, the petitioner alleges on information and belief that the newspapers have a very wide circulation throughout the county, and that they have created a prejudice against it. It cannot be claimed that the presiding judge was obliged to treat these allegations as sufficiently proved. They had no force as evidence, and could do no more than raise an issue. In this respect they were like similar allegations in a sworn answer in chancery. See *Wooley* v. *Chamberlin*, 24 Vt. 270. But if these allegations were to be taken as true, it would not help much. It is not claimed that the hostility to the defendant manifested in the various newspaper items should be taken as a *reflection* of the sentiment of the county; the assertion is that these papers were· factors in *creating* a hostility toward the defendant. It must be admitted that these items which appeared from week to week indicated bitterness and hostility on the part of the writers, but the effect upon those who read them is a matter of pure speculation. In *Missouri* v. *Barton*, 8 Mo. App. 15, it was held that editorials in a newspaper circulating in the county where a prosecution was pending were not competent to establish such a prejudice as would prevent an impartial trial.

Without further proof, the presiding judge was not obliged to treat these newspaper utterances of so much importance as is claimed for them.

The further allegation that there exists throughout the county a general and well defined prejudice against the defendant is but an expression of the petitioner's conclusion; it is an in-

ference which the defendant draws from the other facts stated. The presiding judge was not obliged to adopt it, but was at liberty to reject it for lack of evidence.

The law of this whole subject is so fully covered in the recent case of *Willard* v. *Norcross*, 83 Vt. 268, 75 Atl. 269, that further comment is unnecessary.

Upon a consideration of the whole case, we cannot say that the presiding judge failed to exercise according to law the discretion which the law vested in him.

*Writ denied with costs.*